UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA S. PERRY,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL ASTRUE, Commissioner of<br>Social Security Administration,<br><br>  Defendant. | CASE NO.  C06-5494RJB<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for June 15, 2007 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

Ms. Perry was born in May 1967, and is currently 39 years old. She graduated from high school, and has taken a variety of college classes over the last several years, but has no AA degrees or certificates other than completion of a secretarial course (Tr. 61, 915). At one point she enlisted in the military, but was dishonorably discharged "after a suicidal gesture which appears to have been a deliberate attempt to get out of her contract" (Tr. 261).  Ms. Perry has past relevant work experience as a babysitter, a restaurant worker, a nurse's aide, and a maid (Tr. 50).

Ms. Perry protectively filed her application for SSI disability benefits on July 28, 2000 (Tr. 49, 148-150). She alleged a disability onset of April 1998, but because the regulations limit eligibility for SSI claimants, the issue is whether Plaintiff was disabled as of July 2000 (Tr. 148-150). Ms. Perry attended a hearing on August 24, 2002, before ALJ Cheri Filion (Tr. 828-866), which resulted in an unfavorable ALJ decision dated April 14, 2003 (Tr. 67-77). The ALJ found that Ms. Perry has severe mental impairments of

major depression, an anxiety disorder, and a personality disorder (Tr. 72). The ALJ found that Plaintiff's severe mental impairments did not meet or equal a listing (Tr. 73). The ALJ found that Plaintiff could not perform any past relevant work, and then applied the Medical - Vocational Guidelines to find Plaintiff not disabled1 (Tr. 77).

Ms. Perry timely filed a Request for Review with the Appeals Council, and the matter was remanded for a new hearing on May 14, 2004 (Tr. 78-80). The Appeals Council noted that after finding Plaintiff could not return to her past relevant work, the ALJ erred in applying the Medical-Vocational Guidelines and failed to identify any actual other work Plaintiff could perform (Tr. 79). As well, the ALJ failed to fully address the opinion evidence of record regarding the nature and severity of all of Plaintiff's diagnosed mental impairments; and in particular, the lay opinions of witness and the opinions of several of claimant's counselor's or therapists which indicated Plaintiff has significant mental limitations (Tr. 79). The ALJ was instructed to reconsider the evidence of mental impairments and limitations (Tr. 79). As well, the ALJ was instructed to reconsider Plaintiff's residual functional capacity, and obtain vocational expert testimony to support any finding that Plaintiff can perform other work (Tr. 79-80).

Ms. Perry attended a supplemental hearing before ALJ Filion on October 14, 2004 (Tr. 867-921). At the supplemental hearing, the ALJ elicited testimony from a medical expert (ME), Dr. Tracy Gordy, and a vocational expert (VE), Ms. Leta Berkshire (id.). ALJ Filion again issued an unfavorable decision, dated February 5, 2005 (Tr. 46-63). The ALJ found that Plaintiff has a severe anxiety and personality disorder, with no other mental impairments or physical impairments that are severe (Tr. 58). The ALJ specifically found that Plaintiff's diagnosed depression, PTSD, and obsessive compulsive disorder are not severe impairments (Tr. 58-59). She again found that the severe impairments did not meet a listing (Tr. 59). At step 4, the ALJ concluded that Plaintiff has no exertional limitations, and only her mental impairments limit her ability to do work to simple, repetitive tasks in a work setting that includes no more than superficial contact with the public (Tr. 60). The ALJ noted too that the claimant's RFC is limited by her inability to work with a large number of employees or more than one or two supervisors (Tr. 60). The ALJ found that Plaintiff could not perform any past relevant work, but could work as a laundry folder or a garment sorter, based on the VE's testimony (Tr. 62).

Ms. Perry again timely filed a Request for Review, but the Appeals Council declined to review the

REPORT AND RECOMMENDATION
Page - 2

case in a Notice dated July 6, 2006 (Tr. 8-12), making the decision of the ALJ the final decision of the Commissioner for the purpose of review. 20 C.F.R. § 404.981.

The Complaint in this matter was filed on August 29, 2006, in which Plaintiff challenges the administration's denial of social security benefits.  Specifically, plaintiff contends (i) the ALJ failed to properly evaluate all of Plaintiff's severe mental impairments, (ii) the ALJ erred when she failed to consider all of the limitations resulting from claimant's severe anxiety disorder in the residual functional capacity assessment, and (iii) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony of pain and limitations.  Defendant counters that the ALJ applied the proper legal standards and that the ALJ's findings and conclusions are properly supported by substantial evidence.  After reviewing the matter, the undersigned submits the following report, recommending affirmation of the administrative decision.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

*A. THE ALJ PROPERLY ASSESSED PLAINTIFF'S SEVERE IMPAIRMENTS AT STEP-TWO*

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe."  According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities,"  20 C.F.R. §§ 404.1520(c),   404.1521(a)(1991).  Basic work activities are

1  "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,
2  pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-
3  28 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" **only** if the
4  evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability
5  to work."  *See* SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR
6  85-28)(emphasis added).

7  Here, the ALJ summarized the above standard, reviewed the evidence, and found Plaintiff has an
8  anxiety disorder and a personality disorder that more than minimally effect her ability to work.  The ALJ
9  did not find Plaintiff's alleged depression to be a severe impairment.  Plaintiff argues the ALJ erred when
10 she failed to include depression, PTSD, and/or OCD as severe impairment(s).  After reviewing the ALJ's
11 decision and the medical evidence, the undersigned does not find any error in the ALJ's analysis of
12 Plaintiff's mental impairments.

13 Plaintiff notes that in the ALJ's first decision, she found that depression was a severe impairment,
14 arguing that it is inconsistent for the ALJ to now disregard depression as a severe impairment.
15 Significantly, the ALJ considered additional medical evidence when she wrote the most recent decision,
16 which included testimony from Dr. Gordy.   Dr. Gordy's testimony formed the basis for the ALJ's current
17 finding that depression was nonsevere (Tr. 51-59, 874-885).

18 Plaintiff erroneously states "the ALJ did not even cite to Dr. Gordy's testimony **as the reason** she
19 found Plaintiff's depressive disorder non-severe" and argues this is merely a post hoc argument Defendant
20 is using to justify the ALJ's decision.  The record does not support Plaintiff's argument.  The ALJ relied
21 heavily upon Dr. Gordy's testimony and opinion, and cited to his testimony at length when she considered
22 the matter.  The ALJ wrote:

> At the hearing, Dr. Gordy testified that the claimant had elements of an affective component and dysthymia with sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and thoughts of suicide.  He testified that the claimant had an anxiety disorder NOS with recurrent panic attacks that did not occur at least once per week.  Dr. Gordy testified that the claimant also experienced recurrent and intrusive recollections of a traumatic experience.  However, he did not believe that the claimant had a panic disorder or PTSD.  Dr. Gordy testified that the claimant had a personality disorder with pathological dependence and passivity.  He opined that the claimant had mild restriction of activities of daily living.  Dr. Gordy opined that the claimant had mild difficulties in maintaining social functioning and moderate difficulties in

maintaining concentration, persistence, or pace. Dr. Gordy opined that the claimant experienced one or two episodes of decompensation of extended duration. He testified that the GAF of 45 opined by Nurse Werny in March of 2001 was not accurate (Exhibit 12F). Dr. Gordy observed that the evaluation performed by Nurse Werny in January of 2002 indicated that the claimant had improved significantly. He testified that the claimant's symptoms waxed and waned and referenced Exhibit 20Fp36, which indicated that the claimant went without medications for a time. Dr. Gordy noted that the claimant had a more severe episode in 1998, which is when she began treatment. He said that there were other documented periods in which the claimant's symptoms worsened for two or three weeks at a time such as when her cat died. Regarding the evaluation completed by Nurse Werny in June of 2001, Dr. Gordy reiterated that the claimant had marked limitations during only short periods in which her symptoms were exacerbated. These were not sufficient in his opinion to meet or equal the severity of any listing. He said that the evaluation by Dr. Thorpe occurred during one of the claimant's brief troubled times. Dr. Gordy opined that, overall, the claimant had only mild functional limits. He observed that the claimant had not enjoyed a great deal of success since graduating from high school and had entered several training programs, not all of which were completed. Dr. Gordy was not sure why the claimant had not completed the courses. He testified that the claimant's intellectual capacity was slightly below average. Dr. Gordy opined that the claimant could perform repetitive tasks that did not require original thinking. He further opined that she should have only one or two supervisors. Dr. Gordy opined that the claimant's personality disorder was the prominent impairment while the others were secondary. He said that the record did not reflect a pattern of obsessive compulsive disorder. He testified that Dr. Hoffman's diagnosis of PTSD was not supported. He noted that the claimant suffered a traumatic event, but had no symptoms for the next five years. Dr. Gordy testified that the symptoms of PTSD must persist to warrant the diagnosis. He noted that Dr. Hoffman assessed a GAF of 55. Dr. Gordy testified that the symptoms attributed to obsessive compulsive disorder were actually a defense mechanism related to the claimant's personality disorder. Dr. Gordy did not believe that the claimant had obsessive compulsive disorder and noted that she was not on a treatment regimen for such a condition. Dr. Gordy opined that the symptoms would not interfere with the claimant's ability to sustain a work week. He testified that auditory hallucinations were mentioned in the record, but were not persistent. Dr. Gordy testified that he did not give much weight to the hallucinations since there were only one or two mentions within a five year period. He said that the claimant's Seroquel was for anxiety and sleep and not for auditory hallucinations. Dr. Gordy did not believe that the claimant was fabricating symptoms. He testified that the claimant had intermittent episodes of panic from time to time, but they did not occur once a week. Dr. Gordy testified that the symptoms attributed to a social phobia were part of the claimant's anxiety disorder. He said that the claimant's reported radiculopathy was not substantiated by the objective evidence. Dr. Gordy testified that the claimant had occasional headaches and an episode of migraine, but they were not frequent and she had not received much treatment.

In weighing the medical evidence of record, I have assigned great weight to the opinion of Dr. Gordy regarding the claimant's diagnoses and functioning. He is the only acceptable medical source of record to have reviewed all of the documentary medical evidence. Moreover, Dr. Gordy's opinion regarding the claimant's overall functioning is quite consistent with her reported activities. I assign less weight to the opinions of Nurse Werny and Nurse Morris since they are not acceptable medical sources as defined within the regulations and their opinions are extreme in comparison to the evidence of her actual functioning as a whole. I note that Nurse Werny opined that the claimant had marked limits learning new tasks, which is inconsistent with the claimant's educational pursuits and the actual grades that she has been able to earn. (Exhibit 13F). Nurse Morris opined that the claimant had marked limitations interacting appropriately in public contacts and severe limits tolerating the stresses of a normal work setting (Exhibit 6Fp45). However, in May of 200 she recommended that the claimant look for clerical work (Exhibit 6Fp10). I note that the claimant was able to interact appropriately with students, teachers, and examiners. She also worked as a fast food cashier during the period at issue, which

REPORT AND RECOMMENDATION
Page - 5

obviously entailed dealing with the public. The claimant has remained independent in her personal care and attended community college, performed volunteer work, and worked part-time during the period at issue. These activities demonstrate that the claimant was generally more functional than indicated by the various evaluations completed by Nurse Werny and Nurse Morris, Dr. Gordy observed that there were periods in which the claimant's symptoms worsened briefly, but subsequently improved within two or three weeks. I have considered the treatment notes form Nurse Poole, which indicate that the claimant was fairly stable with medications. However, I give the greatest weight to Dr. Gordy's opinion regarding the claimant's diagnoses since he is a psychiatrist, as noted above, he reviewed the entire record, and he is independent. I assign more weight to the opinion of Dr. Gordy than to that of Dr. Hoffman, who was not able to consider the evidence obtained after January of 1999. Similarly, I assign greater weight to the opinion of Dr. Gordy than to the administrative findings of the State agency medical consultants Dr. Wingate, Dr. Johnston, and Dr. Harrison. Although they are experts in evaluating the psychological issues in disability claims before the Social Security Administration, more than half of the medical evidence was obtained after they reviewed the case. I assign less weight to the conclusions of Dr. Thorpe regarding the claimant's functioning since she way the claimant on only one occasion and apparently did not review any medical records. As noted by Dr. Gordy, Dr. Thorpe evaluated the claimant during a brief period of worsening symptoms. This observation is consistent with progress notes from Nurse Morris around the same time, which show that the claimant complained of increased anxiety related to filing for bankruptcy and changing vocational plans (Exhibit 6F). I note that Dr. Thorpe concluded that the claimant was appropriate for vocational rehabilitation despite the GAF of 42 she opined.

[Omitted]

The claimant was diagnosed with PTSD and obsessive compulsive disorder, but the symptoms attributed to these conditions are related to her anxiety disorder NOS and personality disorder. As noted by Dr. Gordy, the symptoms attributed to PTSD did not exist during the five years following the traumatic event. The claimant was not on a treatment regimen for obsessive compulsive disorder and there was no pattern of symptoms to support such a diagnosis. She was previously diagnosed with asthma, but her shortness of breath was related to anxiety (Exhibit 8E). Therefore, I conclude that PTSD, obsessive compulsive disorder, and asthma are not medially determinable impairments.

The claimant's right rotator cuff tendonitis resolved within a few months and does not meet the 12 month duration requirement. She is obese, but it was determined that her aerobic capacity was only slightly reduced and she is physically active. The claimant complained of back pain on a few occasions, but radiologic evidence showed only minimal degenerative changes and no cause for radiculopathy. The claimant told health care providers that her pain was controlled with medication. She complained of depressive symptoms on occasion, which Dr. Gordy referred to as an affective component. However, the record reflects that the claimant often denied any depression. In July of 2002 she reported that shw as doing much better and was in a positive mood (Exhibit 15Fp4). In February of 2003, she denied any depression prior to the loss of her cat. On August 26, 2004, the claimant again denied depression. She began complaining of migraines in October of 2003. However, her symptoms improved with Atenolol and she has not received much treatment for her headaches. The headaches obviously did not prevent her from attending school. The claimant's thyroid condition is controlled with medication. Thus, I find that the claimant's history of right rotator cuff tendonitis, obesity, back pain, migraines, thyroid condition, and affective component do not represent severe impairments.

(Tr. 54-59).

The administrative record supports the ALJ's step-two finding that during the relevant period, Plaintiff suffered from two several mental conditions or impairments – an anxiety disorder and a personality disorder. Dr. Gordy testified that Plaintiff's diagnoses were personality disorder and anxiety

REPORT AND RECOMMENDATION
Page - 6

1  disorder with "some affective components" (Tr. 874). He opined that Plaintiff's most prominent symptom
2  complex was listing "12.08," i.e., personality disorder (Tr. 874). See 20 CFR 404, Subpt P, App. 1 §
3  12.08. He opined that Plaintiff also had an anxiety disorder under listing 12.06 and dysthymia under listing
4  12.04, which was "secondary to" her personality disorder and that neither the anxiety disorder nor the
5  dysthymia "meet the criteria" of a Listing (Tr. 874). See id. at §§ 12.04, 12.06.    The ALJ properly
6  excluded depression, PTSD, and OCD from her analysis of Plaintiff's severe impairments.

## B. THE ALJ PROPERLY ASSESSED PLAINTIFF'S RFC

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e).

After reviewing the medical evidence and plaintiff's credibility (discussed below), the ALJ concluded Plaintiff "retains the residual functional capacity to perform simple and repetitive tasks in a work setting that involves no more than superficial interaction with the public" and should not work in settings with a large number of employees or more than one or two supervisors (Tr. 62). The ALJ explained:

> Dr. Gordy opined that the claimant could perform repetitive tasks that did not require interaction with lots of ideas or original thinking. He opined that the claimant would do better in work situations involving only one or two supervisors. For reasons already discussed, I will prefer Dr. Gordy's opinion regarding the claimant's functional limitations. He was able to review all of the documentary medical evidence, which can not be said of any other acceptable medical source of record. Dr. Gordy's opinion that the claimant had, overall, mild to moderate functional limitations is quite consistent with her activities. Dr. Thorpe concluded that the claimant would do better with clearly structured, routine activities. Dr. Hoffman observed that the claimant was able to obtain decent grades in community college despite difficulties with working memory. Dr. Johnston noted that the claimant's concentration and memory were sufficient for her to attend classes. Dr. Wingate concluded that the claimant could complete one to three step tasks and more complex tasks. Nurse Werny opined that the claimant had, at most, mild limits with simple instructions. In two of three evaluations, Nurse Morris concluded that the claimant had only mild limits with simple instructions. Nurse Werny and Nurse Morris opined that the claimant had moderate and marked limits interacting with co-workers, supervisors, and the general public. Dr. Johnston and Dr. Harrison both concluded that the claimant had moderate difficulties with social interaction. Dr. Thorpe noted that the claimant was uneasy with people and wold do better working with things. However, the claimant's ability to attend community college, work part-time, shop, ride the bus, maintain friendships, and attend a support group indicate that she is able to work in settings that involve public contact. I note that the claimant's volunteer work at the Rainbow Center involved working one-on-one with people in her capacity as a mentor. Based on these considerations, I conclude that the claimant would do better in a job that requires no more than superficial interaction with the general public.
>
> Accordingly, I find that the claimant has no exertional limitations. She retains the residual

1  functional capacity to perform simple and repetitive tasks in a work setting that involves no
2  more than superficial interaction with the public. The claimant should not work in settings
   with a large number of employees or more than one or two supervisors.

3  (Tr. 60).

4  Plaintiff argues the ALJ's RFC does not include all of her mental limitations. The undersigned is
5  not persuaded. The RFC assessed by the ALJ is properly supported by medical evidence. Particularly, the
6  ALJ incorporated the RFC assessed by Dr. Gordy into the hypothetical question that was then posited to
7  the vocational expert. The vocational expert testified that an individual with Plaintiff's background and
8  RFC could perform unskilled work such as laundry folder and garment sorter (Tr. 917-918).

9  *C. THE ALJ PROPERLY ASSESSED PLAINTIFF'S CREDIBILITY*

10  Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority
11  on evaluating plaintiff's subjective complaints. In Bunnell the Ninth Circuit required the ALJ findings to be
12  properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude
13  the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a
14  claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d
15  1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able
16  to perform household chores and other activities that involve many of the same physical tasks as a
17  particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in
18  Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act
19  does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities
20  may not be easily transferrable to a work environment where it might be impossible to rest periodically.

21  Plaintiff's argument that the ALJ failed to properly consider her credibility and allegations of
22  disability is premised on or coincides with the argument that the ALJ failed to properly consider the medical
23  evidence. As discussed above, the ALJ thoroughly summarized the medical evidence, and she reasoned
24  that the medical evidence did not support Plaintiff's allegations of disability (Tr. 50-60). The ALJ further
25  relied on plaintiff's social and daily activities to discredit any allegations of total disability. For instance,
26  Plaintiff volunteered for a political campaign, lived with a disabled roommate, worked on computers,
27  attended group therapy meetings, attended community college and vocational training full time, shopped,
28  cooked, did household chores, read, cared for her cat, rode the bus, applied for jobs, and went to the

library (Tr. 263, 56-57). These activities are inconsistent with the levels of disability alleged by Plaintiff. Finally, the ALJ noted Plaintiff's work history did not support a finding of disability.  Plaintiff's earnings record showed that she had very low to no earnings during the years preceding the date she alleged disability (Tr. 57). She had received State unemployment benefits for approximately fifteen years (Tr. 673). Plaintiff enrolled in several colleges and training programs, but did not attempt to obtain full time work (Tr. 53-57).  Plaintiff frequently stated her preference for part time work and considered working two hours a week at a library, but worried that her public assistance would be cut off if she did (Tr. 57, 329, 480, 527). The ALJ rationally concluded that extraneous reasons not relating to disability were factors in Plaintiff's lack of employment (Tr. 57).  In sum, the ALJ gave clear and convincing reasons to find that Plaintiff was not fully credible.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 15, 2008**, as noted in the caption.

DATED this 23rd day of March, 2007.

　　　　　　　　　　　　　　　　　　　　　*/s/ J. Kelley Arnold*
　　　　　　　　　　　　　　　　　　　　　J. Kelley Arnold
　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9